## Moninger *versus* Ritner.

1. A married woman, who has been deserted by her husband, and who has been decreed to have the privileges of a feme sole trader, under the provisions of the Act of May 14th 1855 (Purd. Dig. 1008, pl. 24), may convey, without her husband joining in the deed, a good title to her separate real estate which she acquired during coverture, free from any subsequent claim by her husband, as tenant by the curtesy.

2. Said Act of 1855 is not unconstitutional.

3. A., and B., his wife, were married in 1834. In 1860, the wife acquired certain real estate. She died in 1880, leaving surviving her husband, who, claiming as tenant by the curtesy, brought ejectment against C., who was in possession of said real estate. C. offered to show, in defence, that in 1873, B. was decreed a feme sole trader under the Act of May 14th 1855, and as such, granted said real estate in fee simple, to one through whom C. claimed. The court rejected said offer, and directed a verdict for the plaintiff for life.

*Held*, to be error, and that the facts set forth, in the offer, if proved, constituted a good defence to the plaintiff's claim.

October 16th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Washington county :* Of October and November Term 1883, No. 108.

[Moninger v. Ritner.]

Ejectment, by Henry Ritner against George W. Moninger, for a house and lot situate in Washington, Pa. Plea, not guilty.

On the trial, title to the premises in dispute was admitted in Martha Pool, on July 30th 1860, who by deed of that date conveyed the same to Ellen Ritner, wife of Henry Ritner, the plaintiff, the marriage having taken place in 1834. Ellen Ritner died in July 1880, leaving the plaintiff to survive her, who claimed title to the said premises for his life, as tenant by the curtesy.

The defendant made the following offers of testimony:

1. Defendant offers in evidence record at No. 63, December Term, 1873, for the purpose of showing that Mrs. Ellen Ritner was declared a feme sole trader, and entitled to all the provisions of the Act of 1855, to be followed by evidence that she conveyed the title to David Aiken, and that David Aiken conveyed the title to Geo. W. Moninger, the present defendant.

Objected to, as irrelevant. Objection sustained. Exception.

2. Defendant offers to prove that at No. 63, December Term 1873, of this court, Mrs. Ellen Ritner, wife of the plaintiff, presented her petition to the court, alleging that Henry Ritner, her lawful husband, had without cause willfully abandoned her about 1867; that the said petition was supported by her own oath and the evidence of two disinterested witnesses; that in pursuance of the said petition, after notice by publication, the court upon the 21st of October, 1873, granted the following decree: And now, October 21st 1873, on the petition of Ellen Ritner of the borough of Washington, said county, sustained by the testimony of two witnesses, and it appearing to the court that the facts set forth in the petition are true and that notice of this application has been given as directed by said court and being satisfied of the justice and propriety of the application, the court made a decree, and granted the said Ellen Ritner a certificate that she shall be authorized to act and have the power to transact business as a feme sole trader, and that creditors, purchasers, and all other persons may with certainty and safety transact business with her the same as though she had never been married.

To be followed by evidence that in pursuance of this decree Mrs. Ellen Ritner by deed dated January 29th 1874, recorded same date, in consideration of one thousand dollars, conveyed the property in this dispute to David Aiken; to be followed by evidence that David Aiken erected valuable improvements thereon, and that on the 6th of April 1875, he sold and conveyed the same property to Geo. W. Moninger by deed recorded April 9th 1875, in consideration of seven thousand eight hundred and eighty dollars, and that the defendant has

[Moninger *v.* Ritner.]

made valuable improvements on the premises; to be followed by evidence that the plaintiff deserted his wife in 1867, that he left the state and lived in adultery with another woman; that this desertion continued on down to the date of the death of Ellen Ritner; this for the purpose of showing that the plaintiff has no title to the property in dispute.

Objected to as irrelevant and incompetent for the purpose stated. Objection overruled. Exception.

The court directed the jury to find a verdict for the plaintiff for the property in dispute for his natural life. Verdict accordingly, and judgment thereon. The defendant took this writ of error, assigning for error the rejection by the court of his offers, and the instruction of the court to the jury as above.

*M. C. Acheson* (*W. C. Acheson* with him), for the plaintiff in error, cited, Foreman *v.* Hosler, 13 Norris 418; Monroe *v.* Van Meter, 100 Ill. 352.

*Braden* (with him *Miller* and *John M. Braden*), for the defendant in error.—The Act of 1855, authorized a married woman, who was declared a feme sole trader thereunder, to dispose absolutely of *her* real and personal property, howsoever acquired. This we admit Mrs. Ritner did. But the Act did not and could not constitutionally authorize her to convey also her husband's vested interest in her real estate. Curtesy, like dower, exists by virtue of the marriage contract, and in no way depends upon the performance of marital duties by the husband. The court therefore correctly instructed the jury to find for him for a life estate in the premises: Ayetsky *v.* Goery, 2 Brewster 302; Husbands on Married Women 129, § 148; Harris *v.* York Mut. Ins. Co., 14 Wr. 341; Lancaster Co. Bank *v.* Stauffer, 10 Barr 398; Lefever *v.* Witmer, Id. 505.

Mr. Justice Gordon delivered the opinion of the court, November 5th 1883.

The plaintiff below claims title to the property in controversy by virtue of his right as tenant by the curtesy in the estate of his deceased wife, Ellen Ritner, who died some time in July 1880. As she was seised of the lot in dispute during her coverture, were there nothing else in the case, his right to have and hold it, during the term of his natural life, could not be successfully controverted. But on part of the defence there was an offer made to show that, on the petition of Ellen Ritner, setting forth the fact that her husband had, without cause, willfully abandoned her, the court of Common Pleas of Washington county had, in pursuance of the Act of the 14th of May 1855, made its decree, on the 21st of October, 1873, constitut-

ing her a feme sole trader, and had issued to her a certificate to that effect. That being thus fully empowered to dispose of her property as though she were sole, she, on the 29th of January 1874, conveyed the lot in dispute to David Aiken in fee, who afterwards conveyed to George W. Moninger, the defendant. This offer was refused, and the jury were instructed to find for the plaintiff. In this interpretation of the law, and disposition of the case, we cannot agree with the court below.

Taking that offer as proved, and we cannot see why it should not determine the controversy in favor of the defendant.

The Act of 1855 is so plain, positive and unambiguous in its terms, that no one need, for one moment, hesitate concerning its design and intention. It secures to the deserted wife not merely the rights and privileges of a feme sole trader, under the Act of 1718, but it also confers upon her the absolute and unqualified right to dispose of her own property, real and personal, as to her may seem best, and further provides, that in case she dies intestate, such property shall pass to her next of kin as though her husband were previously dead. About the fact therefore, that Mrs. Ritner had the right, so far as it could be conferred upon her by this statute, to sell the property in question, unincumbered by her husband's curtesy, there can be no doubt. Moreover, of her power so to sell and dispose of this property, the certificate issued to her by the Common Pleas, is, by the sixth section of the Act above recited, made conclusive evidence, and so continues to be until it is revoked by the authority from which it emanated. It follows, that the court below, in ruling out the offer of the defendant, disregarded a plain and positive injunction of the General Assembly. But the counsel for the plaintiff below interposes the plea that Ritner, having been married to his wife, Ellen, before the passage of the Act of 1855, had such a vested right, not only in the property which she then had, but also in that which she might afterwards acquire during their marriage, that the Act of 1855 was, as to him, unconstitutional and void. In other words, such was the inherent power of the marriage contract, that, without regard to the performance of that contract on his part, the peculiar rights acquired at its inception could not be abridged, altered or modified by any power short of his own will. But the statement of this proposition is its own refutation. The very premise on which the Act is founded is that the marriage contract has been violated; that the husband has deserted his wife and refuses to support and maintain her. It is, therefore, a curious travesty on the constitutional powers of this Commonwealth to say that the legislature can make no provision for the support of an abandoned wife, if such pro-

vision happens to impinge upon some marital right of the derelict husband. But independently of the arguments which may be drawn from the nature of, and duties involved in, the marriage contract, in favor of the constitutionality of the Act of 1855, there is, in fact, no foundation on which to rest the attempted justification of the judgment of the court below. Ritner's right to curtesy in his wife's estate was no part of the marriage contract, but it resulted from the operation of statutory enactments existing at the time of her death. This point was expressly ruled, in reference to a wife's dower, in Melizet's Appeal, 5 Har. 449, and we may take it for granted that no one will insist that the right of curtesy is superior to that of dower. In that case it was contended that the Act of 1848 was unconstitutional, in that the rights of the wife are fixed and vested at the time of marriage, and that this Act essentially changed and interfered with those rights as well as with those of the husband.

But, in answer, it was objected, that, in this Commonwealth, laws had, from time to time, been passed altering the statutes of distribution, and the manner of making of wills, and that such laws had always been considered sound and good, if in operation at the time of the decedent's death, without regard to whose inchoate interests they might affect. It was further said, that the legislature might, at its discretion, altogether abolish the common law right of dower, and repeal the statute of wills. But this doctrine has peculiar force when applied to the facts in the case in hand, and the error of the court below becomes all the more obvious. Mrs. Ritner's title to the property in dispute had no existence until after the passage of the Act of 1855, and until the acquisition of that title Ritner had no right in the premises inchoate or otherwise. The Act of 1855 could therefore, not interfere with Ritner's vested rights in and to the subject matter of this controversy, for in it he had no such rights. On the other hand, whatever rights he may have had therein he held in subjection to the then existing laws. Whether, then, we adopt the full text of the case above cited or not, the Act of 1855 certainly is, as to the plaintiff's right, constitutional and of full force, and ought so to have been regarded in the court below.

Our attention has been called to the case of Ayetsky *v.* Goery, reported in 2 Brewster 302, as ruling the contention in hand in favor of the judgment below. But as the facts of that case are not given, it is impossible to say whether it has any applicability to the case before us or not. If, indeed, the counsel for the plaintiff in error has properly stated the facts upon which that case was based, it certainly does not, as to the present con-

tention, support the argument of the counsel for the defendant·
in error.

> The judgment of the court below is now reversed
> and a new venire is ordered.