## Appeal of Country Club of Harrisburg

*Victor Braddock* and *Walter R. Sohn* of *Braddock & Sohn,* for appellant.

*James H. Duff,* Attorney General, and *Horace A. Segelbaum,* Deputy Attorney General, for Liquor Control Board.

RUPP and WOODSIDE, JJ., November 27, 1945.—
This appeal is from an order of the Pennsylvania Liquor Control Board refusing the application of The Country Club of Harrisburg for a catering club liquor license in lieu of the club malt or brewed beverage license which it presently holds for its club premises in Middle Paxton Township, Dauphin County.

The sole ground for the board's action is that the total number of retail licenses now in effect in the township exceeds the limitation prescribed for it. in section 2 of the Liquor License Quota Act of June 24, 1939, P. L. 806, 47 PS §744-1002; hence, as therein specified, "no new license" may be issued.

Would the license sought by the appellant be a "new" license within the intent and meaning of the act? The statute has but one purpose, declared in its title and easily distinguishable throughout its provisions—namely, to limit the *number* of retail licenses issued. Thus, it fixes the ratio of licenses to population which is to be maintained, but makes no attempt to regulate the class of licenses within that ratio. Rather, it specifies that they may be "of any class". It follows that once a quota has been exceeded, the prohibition regarding "new" licenses is not against the issuance of a *different class* of license to be substituted for one already in effect, but against the granting of an *additional* license which would increase the number already in effect. Hence, under the act, the approval of the appellant's application would not be tantamount to the issuance of a "new" license.

To hold otherwise would be to impute to the legislature an intent both to limit the number of licenses issued and to "freeze" the class of licenses within that number. We see nothing in the act to warrant such an interpretation.

And now, November 27, 1945, the appeal is sustained and the Pennsylvania Liquor Control Board is

hereby directed to issue to The Country Club of Harrisburg a catering club liquor license upon surrender of the club malt or brewed beverage license now in the club's possession.

HARGEST, P. J., November 27, 1945 (concurring opinion).—I concur in the opinion of the court.

The question as to whether clubs are within the Liquor License Quota Act of June 24, 1939, P. L. 806, was before this court and argued on March 24, 1941, before Judge Fox of this court and President Judge Sheely, specially presiding. The writer of this concurring opinion was at that time ill and took no part in the decision. This court then held that the quota did apply to clubs.

The Act of 1939 makes the decision of the court of common pleas final. We are confronted in this State with an astounding proposition due to the refusal of the legislature to amend the statute to allow an appeal to the appellate court and thus make the law uniform throughout the State.

According to a statement made in In re Lincoln Slovak Political Club, 52 D. & C. 564, 566, decided May 10, 1945, there were 25 decisions holding that the quota law did not apply to clubs and 24 holding that it did. Since that time our attention has been called to two more cases, one holding that the law applied to clubs and the other that it did not.

In the Appeal of Legion Home Association of Danville, 48 D. & C. 123, decided May 29, 1943, the cases up to that time were analyzed as showing that in the four years that had passed since the passage of the law more than 50 opinions were written, and, while several of them were disposed of on technical questions, at least 45 then (and 48 now), were decided on the applicability of the Liquor License Quota Act.

Supplementing the count made in that case, of the 48 cases, 25 have decided that the Liquor License Quota Act does not apply to clubs, and these 25 were decided in nine counties. Twenty-three cases, including an opinion by Attorney General Reno, have decided that the act does restrict the number of club licenses, and these 23 cases were decided in 18 counties. In four counties there are decisions both ways. This is a reprehensible situation, for which the legislature alone can provide the remedy.

Of all of these cases, there are only three which refer to the position upon which the opinion of this court in the instant case rests, namely, that an exchange of a license is not a new license within the meaning of the statute.

In Kester's Appeal, 140 Pa. Superior Ct. 293, 296, the Superior Court dismissed the appeal because it had no jurisdiction to decide the matter, and yet, after so doing, it said (p. 296):

". . . transfers or exchanges from one kind of license to the other are not contemplated, except on the basis of new applications, which are subject to the limitations prescribed by the Act of 1939 . . ."

In two common pleas cases this language was regarded as binding and the fact that it was dicta was not noticed. In neither of them was there any discussion to sustain the conclusion.

In Appeal of Matz, 35 Luzerne Legal Register 281, the court summarily disposes of the question by saying:

". . . we think this case is ruled by Kester's Appeal, 140 Pa. Superior 293."

And in the opinion of this court, to which we have heretofore referred (which is not reported), filed to no. 342, January sessions, 1941, Judge Sheely said: "This contention is answered in Appeal of Kester, 12 A.(2d) 184, 140 Pa. Superior Ct. 293." And Judge

Sheely, without comment, quotes what we have just quoted from the Superior Court opinion.

We recognize that we are bound by authoritative expressions of our appellate courts, but, notwithstanding the high regard which we have for the author, we are not bound by any expressions which an appellate court may make on matters concerning which it has no jurisdiction to make them. It has been thoroughly settled that such language is obiter dicta.

In Welsch v. Pittsburgh Terminal Coal Corp., 303 Pa. 405, it is said (p. 408) :

". . . in every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but obiter dicta, though they may be entitled to great consideration because of the high standing of the tribunal announcing them . . ."

See also Hill et al. v. Houpt et al., 292 Pa. 339, 342.

In Scaife v. McKee et al., 298 Pa. 33, it is said (p. 38) :

" 'General expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision': Cohens v. Virginia, 6 Wheaton 264, 399, per Marshall, C. J.; Frick's Est., 277 Pa. 242 . . ."

And in Levin et al. v. Fourth Street National Bank, 277 Pa. 350, speaking of obiter dicta, it is said (p. 355) :

"It has no value as a precedent, however, aside from its controlling facts . . ."

So, apart from the respect to be given to the distinguished judge who used the language in the Superior Court, we are not bound by it because the court in the very case disavowed any jurisdiction to decide the question. The expression, therefore, is one which could not be controlling in that case and never could be controlling in any case in the Superior Court, unless the law is amended to give it jurisdiction on appeal.

In the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551, we have two fundamental principles: One is:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions."

The other is:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

We are not prepared to say that when the legislature says that where the number exceeds the limitation no *new* license shall be granted that the word "new" contemplates all transfers or exchanges. If that were so, where there was a license for both the retail sale of liquor and of malt or brewed beverages a licensee could not surrender his liquor license even though he desired to sell only malt or brewed beverages.

This construction, as pointed out in the opinion of the court, loses sight of the principle that the court should, if possible, give effect to all the provisions of a statute. We do think the word "new" does not include "exchange"; but, if it is interpreted in the sense of "additional", then we effectuate the intention of the legislature as pointed out in the opinion of the court, because the purpose of the statute is to limit the number of licenses, and the prohibition is against increasing the number of licenses where the limitation has been exceeded.

This opinion must not be construed as adding another case to the multitude of those on the question of whether clubs are within the Liquor License Quota Law. It does not touch that question but is limited to the decision that an exchange of a license is not a "new" license within that statute.

For these reasons, I concur in the opinion of the court.